In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3413

ROBERT HARPER,

*Plaintiff-Appellee,*

*v.*

SHERIFF OF COOK COUNTY and
COOK COUNTY, ILLINOIS,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-02393—**John W. Darrah**, *Judge.*

ARGUED APRIL 6, 2009—DECIDED SEPTEMBER 8, 2009

Before BAUER, SYKES and TINDER, *Circuit Judges.*

BAUER, *Circuit Judge.* This case involves a confused and confusing class action lawsuit that we put to rest today. Robert Harper sued the Sheriff of Cook County, claiming that when new detainees are remanded to the Sheriff's custody after a probable cause hearing, they are unconstitutionally required to undergo certain intake procedures at the Cook County Jail before being

allowed to leave on bond. The district court certified Harper's class, a decision that the Sheriff appeals. We agree with the Sheriff that this is not an appropriate case for class disposition and vacate the decision of the district court granting class certification.

## I. BACKGROUND

Harper was arrested by a Chicago police officer on the evening of September 29, 2005. The next day, he was brought before a judge around 1:00 p.m. for a probable cause hearing. The judge found probable cause, set bond at $15,000, and remanded Harper to the Sheriff's custody. Harper claims that his wife attended the probable cause hearing and immediately sought to post cash bond, but was not permitted to post bond until sometime after 4:00 p.m. Harper was released from the Sheriff's custody around 11:00 p.m.

When a detainee returns to the Cook County Jail after a probable cause hearing, he is placed in a bull pen and begins to be processed into the jail. This involves assigning the detainee an identification number, taking his picture and fingerprints, collecting any property carried by the detainee, conducting a personal history interview, performing a psychiatric screening, assigning the detainee to a division within the jail, conducting a medical examination, and a strip search.

Family members or friends who want to post bond for a detainee do so, not with the Sheriff, but with the Office of the Clerk of the Circuit Court of Cook County. The

Sheriff's policy directs that "[i]nmates who have their bond posted while going through the intake process are moved ahead of the other inmates in order to speed up their release . . . . In some instances, the psychiatric interview and the medical examination are eliminated." Before releasing a detainee, the Sheriff takes a number of steps to ensure that he is releasing the right person. This process includes checking the detainee's photograph, comparing the detainee's fingerprints with those taken during the intake procedure, and requiring the detainee to provide answers to personal questions that were asked during the prior personal history interview that only the detainee should know.

Harper brought this action to challenge his detention and treatment in the jail. In his complaint, Harper explained that he "was required to submit to the processing required by the Sheriff's policies of a person being admitted to the Cook County Jail while plaintiff's family members posted cash bond." He went on to describe the processing, which "began with placement into an overcrowded and unsanitary animal cage, and include a chest x-ray, the non-consensual insertion of a swab into plaintiff's penis [to test for STDs], the non-consensual taking of blood, and a strip search which was conducted in a manner calculated to embarrass and humiliate."

In his motion to certify the case as a class action, Harper sought to represent "[a]ll persons who were processed into the Cook County Jail on and after May 2, 2005 while persons acting on behalf of the arrestee

sought to post cash bond." He later changed his proposed class definition to "[a]ll persons processed into the Cook County Jail on and after May 2, 2005 while that person, or someone acting on his (or her) behalf, sought to post cash bond." The district court granted Harper's motion to certify the case as a class action, but found that Harper's proposed class definition was too broad and ordered him to provide a new class definition within fourteen days. We granted the Sheriff's petition to appeal from the order granting class certification according to Federal Rule of Civil Procedure 23(f).

## II. DISCUSSION

To certify a class, a district court must find that each requirement of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) is satisfied as well as one subsection of Rule 23(b). "Failure to meet any of the Rule's requirements precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). In this case, Harper claimed, and the district court agreed, that his class action satisfied Rule 23(a) and Rule 23(b)(3) (predominance of common issues and superiority of the class action format). On appeal, the Sheriff claims that none of the Rule 23(a) prerequisites for class certification were met and that Harper's proposed class also failed to meet the requirements of Rule 23(b)(3), so the district court should have denied class certification. We review a district court's decision to certify a class for an abuse of discretion. *Arreola*, 546 F.3d at 794.

## A. Jurisdiction

Before getting to the substance of this case, we address a jurisdictional issue. Rule 23(f) states that "[a] court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed . . . within 10 days after the order is entered." The Sheriff followed this procedure and we permitted the appeal. However, Harper claims that the district court's order was not the appealable order contemplated by Rule 23(f) because it did not define the class as required by Rule 23(c)(1)(B), and that, consequently, we do not have jurisdiction to consider the Sheriff's appeal. Harper is correct that the district court did not define the class as it should have, but that does not deprive us of jurisdiction.

There is no doubt that the district court certified the class. Its order states: "Plaintiff's Motion to Certify Case as a Class Action is granted." This allowed the Sheriff to seek permission to file an interlocutory appeal. Harper argues that the Sheriff was required to wait until a new class definition was submitted. But Harper was charged with that responsibility and the Sheriff had only ten days in which to seek permission to appeal. The Sheriff waited as long as he could and acted properly.[1]

---

[1] The Sheriff submitted his Rule 23(f) request to file an interlocutory appeal on the same day that Harper's amended class definition was due. Because Rule 6 directs that weekends are not counted when a time period is less than eleven days,
(continued...)

Furthermore, the propriety of resolving Harper's proposed class issues through the class action format, which goes to the heart of this appeal, is not dependent on the subtleties of the class definition.

### B. Class Certification

Next, we must decipher what Harper is complaining about in order to determine whether his claim is suitable for disposition through the class action format. As the Sheriff notes, Harper's claim has been a moving target throughout this litigation. Harper's actual complaint makes it seem that he is seeking to challenge the specific intake procedures utilized by the Sheriff such as the strip search and STD test. Harper's deposition testimony confirms that he was offended by these two procedures. But Harper assured us multiple times at oral argument that this case is not about searching and swabbing, and we take him at his word. If these were his claims, this case would be duplicative of two other class actions challenging these procedures at the Cook County Jail. *Young v. County of Cook*, 06 C 552 (strip search); *Jackson v. Sheriff of Cook County*, 06 C 493 (STD testing).[2]

---

[1] (...continued)
ten days for the Sheriff in this case was the same as fourteen days for Harper.

[2] The complaint also mentions a chest x-ray and blood draw as part of the processing procedures. But Harper's brief acknowledges that he had "no problem" with these two procedures.

Failing to take issue with any particular intake proce-
dure, Harper is left with a claim that the Sheriff is uncon-
stitutionally holding detainees after bond has been
posted.[3] But the constitutionality of this detention
depends on whether the length of the delay between the
time the Sheriff was notified that bond had been
posted and the time that the detainee was released was
reasonable in any given case. *See Chortek v. City of Mil-
waukee*, 356 F.3d 740, 747 (7th Cir. 2004) (delay in process-
ing is actionable if unreasonable). That is an individual
issue that will depend on how long each detainee was
held after bond was posted and what justifications
there might be for the delay on that particular day or
for that particular detainee—the time of day, whether
the jail was processing an unusually large number of
detainees at that time, whether other events occurring
at the jail legitimately slowed processing times, whether
the detainee's lack of cooperation delayed processing,
etc. *See Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988)
(what is a reasonable time for detaining prisoner after
grounds for detention have ceased depends on facts

---

[3] This gives Harper the benefit of the doubt. In some places, his
brief claims that detainees should not be processed into the
jail when a family member is ready, willing, and able to
post bond. But bond is posted at the Clerk's office; Harper
does not explain how the Sheriff is to blame for any delay a
family member might experience in being allowed to
actually post bond with the Clerk and the Sheriff cannot be
expected to forego processing based on a detainee's as-
surances that bond will be posted soon.

presented in each case). Liability, to say nothing of damages, would need to be determined on an individual basis. Thus, common issues do not predominate over individual issues, making this case inappropriate for class disposition. Fed. R. Civ. P. 23(b)(3).[4]

Harper counters that a common issue predominates: whether it is reasonable to assign a jail identification number to a detainee before allowing him to be released on bond. But claiming that an issue predominates does not make it so. Harper is trying to focus the class certification discussion around an issue that is not central to the litigation. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624-25 (1997) (basic fact that all members of proposed class were exposed to asbestos was insufficient to satisfy predominance requirement where greater number of significant individual issues existed); *see also Hyderi v. Washington Mut. Bank, FA,*

---

[4] Harper also attempts to bring this action on behalf of individuals who were required to undergo certain processing procedures before being allowed to post bond themselves. It is questionable as to whether Harper can represent these individuals since he did not attempt to post bond himself and so his claim is likely not typical of that portion of the purported class that posted bond themselves. *See* Fed. R. Civ. P. 23(a)(3). Regardless of this typicality concern, the reasonableness of the delay between a detainee informing the Sheriff of his desire to post bond and the detainee's release remains an individual issue to be determined according to the length of the delay and the conditions and exigencies of the jail as they existed on that particular day.

235 F.R.D. 390, 403 (N.D. Ill. 2006) ("A putative class representative cannot satisfy the predominance requirement by defining the common issue narrowly and leaving all of the individual issues for follow-on proceedings, especially when the non-common issues are necessarily intertwined with the common issues and resolution of the common issues would not materially advance the litigation."). The fact that the Sheriff assigned Harper an identification number cannot be what caused Harper the embarrassment, humiliation, unreasonable deprivation of liberty, and pain and suffering described in his complaint.

If assigning identification numbers is the predominant issue in this case, then Harper would be arguing that it is unconstitutional to give detainees, who have been remanded to the custody of the Sheriff to keep until trial or until bond is posted, an identification number, regardless of the amount of time it takes to assign the number and ultimately release the detainee. The Sheriff processes approximately 300 new detainees into the jail every day and he must maintain some system of keeping track of who has been committed to, and released from, his custody. There is nothing unconstitutional about assigning an identification number to a detainee who has been remanded to the custody of the Sheriff, unless it takes an unreasonable amount of time or is done in some unreasonable manner. And, as we just stated, those are individual issues.

We have one last matter to resolve. Harper makes an equal protection claim that individuals with wealth,

clout, or political influence are not required to undergo the Sheriff's intake procedures, but are allowed to immediately post bond (individually or through a family member) and be released from the Sheriff's custody. Harper admitted that he was not treated differently from anyone he observed in the jail; to support his equal protection claim, Harper obtained an affidavit from a police officer who was arrested and claimed that after his hearing he was not placed into a bull pen or processed into the jail, but was released immediately after the hearing when his wife posted bond. The officer claimed that this is common treatment for persons with clout.

It is easy to understand why police officers would not be placed in a bull pen with other detainees for the safety of the officers. The Sheriff's written policy states that one reason to separate a detainee is his need for protective custody. But either way, class action disposition is not a superior method of litigating this claim. *See* Fed. R. Civ. P. 23(b)(3). Harper is not interested in a large damage award (he claimed at oral argument that he would have brought this case as a Rule 23(b)(2) action for an injunction if he had standing to do so), and his desire to prove the existence and illegality of the Sheriff's discriminatory practice can be satisfied in an individual suit without the management issues of a class action. It would be better to litigate this claim with Harper's other individual claims.

### III.  CONCLUSION

For the reasons discussed above, we VACATE the district court's certification of Harper's class and REMAND for resolution of Harper's individual claims.