In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1498

RONALD PORTIS, MADRIC LANCE, and
EMMETT LYNCH, individually and
on behalf of a class,

*Plaintiffs-Appellees*,

*v.*

CITY OF CHICAGO, ILLINOIS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 3139—**Robert W. Gettleman**, *Judge*.

ARGUED SEPTEMBER 14, 2009—DECIDED JULY 23, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and
EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. The City of Chicago occasionally makes custodial arrests of persons who have committed offenses that are punishable by fines but not imprisonment. From May 2, 2000, through May 31, 2004,

the City's police made approximately a million arrests. Of these, some 36,000 were for fine-only offenses, such as disorderly conduct, gambling, peddling without a license, failing to stop a car at a stop sign, or walking a dog without a leash. See *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986). The Constitution allows police to make custodial arrests for fine-only offenses, see *Atwater v. Lago Vista*, 532 U.S. 318 (2001), and this is more likely to occur if the suspect cannot or will not provide identification that would allow the police to write a ticket. Still, even an uncooperative person is entitled to be released after a reasonable time during which the arresting authority learns who he is, performs a check for outstanding warrants, and obtains consent to the terms of bond. See *Gerstein v. Pugh*, 420 U.S. 103, 113–14 (1975); *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 437 (7th Cir. 1986).

After Chicago's police know the arrested person's identity and conclude that he is not wanted on a more serious charge, and a supervisor determines that probable cause supports the accusation, a desk sergeant issues what the parties call a CB (for Central Booking) number. This establishes the person's entitlement to be released on a personal-recognizance bond (which the parties call an I-bond) under Ill. S. Ct. R. 553(d). The bond must be prepared and signed; the police must retrieve and return the arrested person's belongings (for pocket knives and many other items are not appropriate in police station holding areas; they are taken and inventoried for return on the person's release). Plaintiffs in this class action contend that taking more than

two hours to perform the steps needed to get from the generation of the CB number to the suspect's release necessarily makes detention unreasonable and violates the fourth amendment. The district court agreed with that submission. See 621 F. Supp. 2d 608, 620 (N.D. Ill. 2008). Before beginning what could be a lengthy process of ascertaining each class member's damages, the court certified the legal issue for appeal under 28 U.S.C. §1292(b). This court accepted the appeal.

Chicago asks us to hold that the concept of "reasonableness" is incompatible with a bright-line rule, such as "no more than two hours between CB number and release." In *County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991), the Supreme Court established a 48-hour line between arrest and presentation to a magistrate for a probable-cause hearing. But that line, which is a good deal longer than the district court's two-hour rule, is only a presumption: delay of more than 48 hours is presumed unreasonable and must be justified by the government; delay of 48 hours or less is presumed reasonable, and the arrested person bears the burden of establishing that the length of his custody is nonetheless unreasonable.

The district court's two-hour rule, by contrast, is not a burden-allocation device; the district judge concluded that it just does not matter why the process from CB number to release takes more time. If all officers are tied up with more urgent matters (a riot starts, for example, or a group of youngsters is arrested, and juveniles' higher processing priority delays the handling of adult

cases), that's irrelevant. If so many people are arrested at once that officers on duty in the stationhouse are overwhelmed and a queue develops, that's irrelevant. If a person is too drunk or high on drugs to make a voluntary decision to accept the conditions of the bond (about 10% of people arrested in Chicago for fine-only offenses are drunk or high), or is ill and receiving emergency medical treatment, that's irrelevant too. Given the contextual nature of analysis under the fourth amendment, see *Illinois v. Gates*, 462 U.S. 213, 232 (1983), it is very hard to justify an inflexible two-hour rule.

More than hard. It is impossible. After *Gerstein* stated that people may be held only a reasonable amount of time after arrest, courts across the country began to adopt numerical deadlines. The Supreme Court observed in *McLaughlin* that the profusion of these arbitrary lines was not only unwarranted but also complicated the administration of the criminal-justice system. 500 U.S. at 56. It adopted the 48-hour burden-shifting approach—which, to repeat, is not a bright line of the kind the district judge drew—to supersede the various time limits that other courts had established, and to get federal judges out of the business of "making legislative judgments and overseeing local jailhouse operations." *Ibid*. The district judge in this case has done just the sort of thing that *McLaughlin* disapproved.

Now it is true that the 48-hour burden-shifting approach does not apply when the police don't plan to present the suspect to a magistrate for a probable-cause hearing. See *Chortek v. Milwaukee*, 356 F.3d 740, 746–47

(7th Cir. 2004). But this does not mean that a district court can put *McLaughlin*'s rationale to one side and establish a numerical definition of a reasonable detention. The Justices observed in *Atwater* that *McLaughlin*'s general approach applies to arrests for fine-only offenses, see 532 U.S. at 352, and may be supplemented by time limits established by legislatures. After remarking in *Chortek* on the fact that *McLaughlin* deals with the time between arrest and presentation to a magistrate, we did not go on to establish a numerical definition of a reasonable time between arrest and release. Nor did *Gramenos* or any of the other decisions on which plaintiffs rely. Those decisions call for an explanation of extended delay but do not establish an outer limit. The *only* numerical line is *McLaughlin*'s, and it is a presumption rather than a maximum. Just as a district court could not say "Chicago has 24-hour courts and lots of police, so notwithstanding *McLaughlin* every person arrested in Chicago must be taken before a magistrate within 12 hours", so it can't set a numerical limit for fine-only offenses, based on Illinois' procedures for releasing people on personal recognizance; *McLaughlin* tells us that reasonableness must be assessed one case at a time. It takes a legislature to adopt a rule such as "no more than two hours may pass between a CB number and release." The reasonableness requirement of the fourth amendment is a standard, not a rule.

Neither the State of Illinois nor the City of Chicago has adopted a time limit for the period between arrest (or the CB number) and release on bond. Even if they had, enforcement would be a matter of state law. The fourth

amendment does not create remedies for violations of state or local law. See *Virginia v. Moore*, 553 U.S. 164 (2008). Nor does the fourth amendment give any special status to CB numbers. The district court did not explain why it set a time limit for a particular *part* of the process. What is reasonable, or not, is how much time passes between arrest and release, in relation to the reasons for detention; the time for each step along the way is not subject to an independent limit. See *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (en banc). None of the class members was held more than 24 hours in total, and none of the representative plaintiffs was held more than 16¼ hours. The median time between the CB number and release was 3.75 hours during the 52 months covered by the class definition; the mean time was 4.42 hours. The length of detention would not decrease if Chicago were to reallocate how its officers' time is devoted, so that it would take longer to do identity and warrant checks (steps that precede the CB number) while the processing after the CB number were expedited by the assignment of additional person-hours to those chores. Yet that's the sort of reallocation that the district court's order would lead to.

What remains true, as *McLaughlin* observed and *Chortek* reiterated, is that detention less than 48 hours may be unreasonably long. Needless delay, or delay for delay's sake—or, worse, delay deliberately created so that the process becomes the punishment—violates the fourth amendment. *McLaughlin*, 500 U.S. at 56, 59. Indeed, we suggested in *Gramenos* and *Chortek* that detentions as brief as four hours could be excessive and must be

justified. But the plaintiff bears the burdens of proof and persuasion on the contention that any particular detention was excessive, and the court must examine not only the length of a given detention but also the reasons why release was deferred. A series of decisions finding one or another delay unreasonable (or justified) may lead Chicago to modify its policies, but no numerical shortcut will cover all situations.

This means not only that the district court erred in prescribing a two-hour limit from CB number through release, but also that the class must be decertified. The premise of the class certification is that one rule applies to all members. Fed. R. Civ. P. 23(b)(3). Because reasonableness is a standard rather than a rule, and because one detainee's circumstances differ from another's, common questions do not predominate and class certification is inappropriate. So we held in *Harper v. Sheriff of Cook County*, 581 F.3d 511 (7th Cir. 2009), another case arising from the procedures used to process newly arrested persons before release on bond. Everything said in *Harper* is equally applicable here.

The three individual plaintiffs may be able to show that they were held unreasonably long, but they must do so without the benefit of a two-hour cap, and their claims must proceed as personal rather than class litigation. The Supreme Court suggested in *McLaughlin* that class treatment might be appropriate if the class sought to establish that a jurisdiction had adopted a policy of deliberate delay. 500 U.S. at 59. That sort of policy could be ended by an injunction. We do not foreclose the possibility of

such class-wide relief here, but the record so far does not establish deliberate delay. The district court's decision is reversed, and the case is remanded for proceedings consistent with this opinion.