In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 23-1454

JONATHAN PEOPLES,

*Plaintiff-Appellant,*

*v.*

COOK COUNTY AND THOMAS J. DART,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-07712 — **Charles P. Kocoras**, *Judge.*

_____

ARGUED MAY 14, 2024 — DECIDED FEBRUARY 18, 2025

_____

Before SYKES, *Chief Judge*, and PRYOR and KOLAR, *Circuit Judges*.

KOLAR, *Circuit Judge*. On the Friday before a holiday weekend, Jonathan Peoples pleaded guilty to felony possession of a controlled substance under Illinois state law. Peoples was sentenced to one year of incarceration plus one year of mandatory supervised release, and he received credit for time served that exceeded his term of incarceration. As Illinois law requires, the state court ordered the Cook County Sheriff's

Office to deliver Peoples to the Illinois Department of Corrections for processing onto supervised release. But because IDOC does not accept inmate transfers on weekends or holidays, the Sheriff's Office detained Peoples at the Cook County Jail until he could be transferred to IDOC four days later. Once Peoples arrived at IDOC, they processed and released him that same day.

Peoples brought a Section 1983 claim against Cook County and Cook County Sheriff Thomas J. Dart in his official capacity, alleging that he was detained beyond the end of his sentence in violation of his constitutional rights. He argues on appeal that the district court mistakenly concluded that the Fourth and Fourteenth Amendments did not apply to his claim, and in the alternative, that the district court erred when it determined that he had not presented a triable Eighth Amendment claim. Because the district court's analysis was correct, we affirm.

## I. Background

We begin with an overview of the relevant state and county policies that governed Peoples's release before turning to the factual and procedural history.

### A. Illinois Department of Corrections Policy

In Illinois, certain prisoners, like Peoples, are provided with "one day of sentence credit for each day of his or her sentence of imprisonment or recommitment ... [and] [e]ach day of sentence credit shall reduce by one day the prisoner's period of imprisonment or recommitment...." 730 ILCS 5/3-6-3(a)(2.1). The Illinois Department of Corrections has exclusive responsibility to calculate state prisoners' sentences, including awarding or subtracting sentence credit. 20 Ill. Adm. Code

§§107.110(c), 107.150(a). The IDOC is also charged with assessing whether sentences have been appropriately served. *Id.* At the end of their custodial sentences, convicted felons in Illinois are required to serve a term of mandatory supervised release. 730 ILCS 5/5-4.5-15(c); 730 ILCS 5/5-8-1(d). As with calculating sentences, IDOC has sole authority to process inmates onto mandatory supervised release. 730 ILCS 5/3-14-2(a). IDOC's processing procedures include verification of sentence credit, review of the offender's file, determination of a host site for supervision, a check for holds and warrants, identification measures that include a photograph and DNA and fingerprint collection, and a medical examination. At the time of the events in this case, IDOC required processing and sentence calculation for male inmates to be performed by IDOC staff only.

After a felony sentencing occurs, certain individuals are known as "turnarounds." Turnarounds are those who received a sentence of incarceration that includes credit equal to or exceeding the time to be served, so they are transferred to IDOC only for processing onto supervised release. During the relevant period, IDOC's Reception Center accepted transfers from 8:00 a.m. until 1:30 p.m. on Mondays, Tuesdays, Thursdays, and Fridays. They did not accept transfers on Wednesdays, during the weekend, or on holidays.

### B. Cook County Sheriff's Office Policy

Individuals sentenced to IDOC custody, including turnarounds, were transported that same day by the Sheriff's Office from the sentencing courthouse to the Cook County Jail. At the Jail, a unit of the Cook County Department of Corrections reviewed each individual's sentencing paperwork to

determine whether the individual should remain in custody or be discharged.

For individuals who needed to be transferred to state custody for processing, the Sheriff's Office would schedule transportation to the IDOC Reception Center for the next day that IDOC accepted transfers, with a goal of arriving by 8:00 a.m. Because IDOC did not accept transfers every day, sometimes individuals remained at Cook County Jail until they could be sent to IDOC.

### C.  Peoples's Guilty Plea and Time in Custody

At around 1:00 p.m. on February 15, 2019—the Friday before Presidents' Day weekend—Peoples pleaded guilty to possession of a controlled substance, a felony. After accepting his plea and finding him guilty, the judge sentenced him to one year of imprisonment with IDOC and one year of mandatory supervised release.

When Peoples pleaded guilty, he had already spent 217 days in the custody of the Sheriff's Office, 45 of which were at the Cook County Jail, and the remainder of which were spent out on bond and subject to electronic monitoring. Because the judge credited Peoples with 217 days and then sentenced him to 365 days of imprisonment, he effectively sentenced Peoples to time-served plus mandatory supervised release. *See* 730 ILCS 5/3-6-3(a)(2.1) (providing that each day of sentence credit reduces the sentence by the same number of days, so Peoples's 217 days of credit reduced his sentence to 148 days). Even so, the judge did not order the Sheriff to release Peoples. After all, IDOC still needed to complete its calculations and process Peoples for supervised release. To that end, the judge ordered the Cook County Sheriff to "take" Peoples "into

custody," although he already was in custody, and "deliver him to the [IDOC]," which in turn would confine Peoples "in a manner provided by law until the above sentence is fulfilled." Peoples understood when pleading guilty that he would have to be processed out by IDOC before he could return home, but he did not expect to spend several days at the Cook County Jail.

After the end of the sentencing hearing, the Sheriff's Office took Peoples from the Maywood, Illinois courthouse to the Cook County Jail. The Sheriff did not immediately send Peoples to IDOC because IDOC would not have accepted him until the following Tuesday—Monday being Presidents' Day. Peoples was held in the general population of the Jail for four nights. On the morning of Tuesday, February 19—the first available time for transfer—the Sheriff transported Peoples to the IDOC Reception Center, where he was processed and released that same day.

### D. Procedural History

On behalf of himself and others similarly situated, Peoples filed a putative class action in the Circuit Court of Cook County pursuant to 42 U.S.C. §1983 for violations of the United States Constitution, the Illinois Constitution, and state law. Peoples alleged that his constitutional rights were violated by the Cook County Sheriff Office's policy or practice of "detaining and re-incarcerating people after they are sentenced to time served without any legal justification to do so." Defendants removed the suit to the U.S. District Court for the Northern District of Illinois. After the close of discovery, Defendants moved for summary judgment.

The district court granted Defendants' motion. The district court held that neither the Fourth Amendment nor Fourteenth Amendment applied to Peoples's overdetention claim, and it instead applied the Eighth Amendment. In turn, the district court concluded that Peoples failed to introduce sufficient evidence that the Sheriff violated the Eighth Amendment, and that without a constitutional violation, Peoples could not establish a Section 1983 claim. The district court granted summary judgment to Defendants on Peoples's federal claims with prejudice and declined to exercise supplemental jurisdiction over Peoples's state law claims. This appeal followed.

## II. Discussion

We review a district court's grant of summary judgment de novo and construe the facts in the light most favorable to the non-moving party—here, Peoples. *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018); *Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021).

On appeal, Peoples asserts three arguments. First, the district court erred in ruling that the Fourth Amendment is inapplicable to his overdetention claim. Second, and alternatively, the district court erred in ruling the Fourteenth Amendment is inapplicable to Peoples's overdetention claim. Third, and finally, even if the Eighth Amendment is the applicable constitutional provision, the district court erred in finding that Peoples failed to present a triable Eighth Amendment claim. We begin by determining the applicable constitutional framework, and then analyze Peoples's claim under that framework.

### A. Applicability of the Fourth, Eighth, and Fourteenth Amendments

Plaintiffs can sue a municipality under 42 U.S.C. §1983 when the municipality's actions violate the United States Constitution and stem from "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010); *see generally Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). Absent a constitutional injury, there is no municipal liability under *Monell*. *Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) (*Monell* liability impossible when there is no constitutional violation); *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("[T]here can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [the plaintiff's] constitutional rights."). So we must start by identifying the source of any constitutional injury Peoples may have suffered.

The three possible options are the Fourth, Eighth, and Fourteenth Amendments, which we tackle in that order. Peoples's principal argument is that the Fourth Amendment applies, so we look there first. We identify no Fourth Amendment right implicated by these circumstances. Instead, the Eighth Amendment governs Peoples's overdetention claim. We then reject Peoples's alternative argument that the Fourteenth Amendment should apply.

1.  **Fourth Amendment**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and ef-fects, against unreasonable searches and seizures." U.S. Const. amend. IV. In line with that text, "the ultimate touch-stone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). A person is seized when officials "restrain[] his freedom of movement" such that he is "not free to leave." *Brendlin v. California*, 551 U.S. 249, 254–55 (2007). There is no doubt that the Fourth Amendment applies to pretrial detention. *Lewis v. City of Chicago*, 914 F.3d 472, 474–75 (7th Cir. 2019). But Peoples challenges his detention after a guilty plea and conviction, not his pretrial detention.

In ruling that the Fourth Amendment was inapplicable in this case, the district court relied on a footnote in *Manuel v. City of Joliet*, 580 U.S. 357, 369 n.8 (2017). There, the Supreme Court explained that "once a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Id.* The Supreme Court elaborated that "the Framers 'drafted the Fourth Amendment' to address 'the matter of *pretrial* deprivations of liberty,' and the Amend-ment thus provides 'standards and procedures' for the 'de-tention of suspects *pending* trial.'" *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 274 (1994) and *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975)) (emphasis in original).

The Supreme Court's assertion in *Manuel* that the Fourth Amendment "drops out" after conviction came in response to the dissent's concerns about what framework the majority would apply to post-trial challenges to the basis of a

conviction. *Manuel*, 580 U.S. at 369 n.8, 382 n.3. In a previous look at this language in *Manuel*, we advised that the "Supreme Court has never announced nor implied that conviction destroys the entirety of a prisoner's Fourth Amendment rights." *Henry v. Hulett*, 969 F.3d 769, 780 n.1 (7th Cir. 2020) (en banc). We then held that the "Fourth Amendment right to bodily privacy … does not extinguish upon conviction" and continues "within the walls of a prison." *Id.* at 788. Still, the fact that some Fourth Amendment rights persist after conviction, such as a right to bodily privacy against unreasonable searches, does not mean that Peoples retained a Fourth Amendment right against overdetention.

Indeed, we ultimately agree with the district court that Peoples cannot make out a Fourth Amendment claim. Peoples knew when he pleaded guilty that he would be subject to additional procedures before he would be released. The court's commitment order did not allow him to leave the courthouse of his own accord. And Peoples was already in the custody of the Sheriff, through electronic monitoring, when he entered the courthouse. So, although his detention at the Cook County Jail was longer than he anticipated, we cannot identify a seizure implicating the Fourth Amendment.

Peoples also argues that this court's post-*Manuel* decision in *Driver v. Marion County Sheriff* demonstrates that the district court erred. 859 F.3d 489 (7th Cir. 2017). *Driver* dealt with an interlocutory appeal of the lower court's denial of class certification for two subclasses who alleged that the Marion County sheriff detained them at the county jail awaiting release for an unreasonably long period of time in violation of the Fourth Amendment. *Id.* at 490. Most relevantly, those subclasses included individuals who were convicted but who

had completed the jail time portion of their sentences. *Id.* at 491. We held that the district court mistakenly believed that "it was not allowed to engage in an analysis of the merits," and we vacated and remanded with instruction to consider all issues related to the Rule 23 factors for class certification "even if they overlap with the merits." *Id.* at 495; *see Wal-Mart Stores, Inc. v. Duke*, 564 U.S. 338, 351–52 (2011) (recognizing the "necessity of touching aspects of the merits in order to resolve preliminary matters" as a "familiar feature of litigation").

While the *Driver* opinion discussed the merits in passing, our analysis was anchored to the Rule 23 factors required for class certification and not the plaintiffs' Fourth Amendment claims. 859 F.3d at 491–95. What's more, at summary judgment after remand, the district court applied the Fourteenth Amendment, not the Fourth Amendment, to persons in the class who "had completed a sentence." *Driver v. Marion County*, No. 1:14-cv-02076-RLY-MJD, Doc. 408 at 20, MSJ Order (S.D. Ind. June 3, 2020). In other words, *Driver* did not provide a robust analysis on the merits about how the Fourth Amendment would apply to post-conviction detentions, let alone to detention pending transfer to IDOC.

Peoples seeks further support for his view of *Driver* through reference to *Williams v. Dart*, but we see things differently. 967 F.3d 625, 635 (7th Cir. 2020). In *Williams*, we explained that *Driver* addressed a "proposed class of Fourth Amendment plaintiffs 'composed of persons for whom legal authority for detention has ceased, whether by acquittal after trial, release on recognizance bond, completion of jail time in the sentence, or otherwise.'" *Id.* (quoting *Driver*, 859 F.3d at 491). We described *Driver* as saying that "[a]s to that class,

further detention was lawful for only such time as reasonably needed to merely process the release." *Id.* (quotation marks omitted). Setting aside whether *Driver* made such a conclusion on the merits, that proposed class is still factually distinct because it did not include persons who required transfer to IDOC custody. Unlike when a person is in custody after his jail sentence has expired, the Cook County Sheriff's "legal authority" to detain Peoples did not cease until transfer to IDOC. *Driver*, 859 F.3d at 491. Because of IDOC's statutory role in calculating sentence credit and preparing Peoples for supervised release—another form of custody—his situation is not analogous to persons held in jail beyond the time when they should be free to go.

In conclusion, the Fourth Amendment does not apply to Peoples's overdetention claim. Consequently, we need not address whether his pre-transfer detention was a "reasonable" seizure. *See United States. v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985).

## 2. Eighth Amendment

While the Fourth Amendment is not applicable here, we have repeatedly recognized "incarceration beyond the date when a person is entitled to be released" as an Eighth Amendment violation. *Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016)*; see also Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006) ("[W]e agree that incarceration after the time specified in a sentence has expired violates the Eighth Amendment if it is the product of deliberate indifference."). Put another way, a person may not be held "beyond the term of his incarceration without penological justification." *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014).

To be sure, while the commitment order kept Peoples in the Sheriff's hands until he reached IDOC, Peoples's sentence of incarceration had in fact elapsed immediately after sentencing. IDOC released Peoples the same day they received him. IDOC's duty to verify that Peoples's term of incarceration was over and process him onto supervised release might have provided a good reason for the Sheriff to hold Peoples, but the time to complete those steps did not change the length of his sentence. Thus, Peoples's detention beyond February 15 calls for an Eighth Amendment inquiry.

### 3. Fourteenth Amendment

Before moving on to our Eighth Amendment analysis, we must also explain why we reject Peoples's alternative argument that if the Fourth Amendment does not apply, then we should analyze his claim under the Fourteenth Amendment. Peoples cites several other courts that have identified a protected liberty interest and substantive due process right against overdetention in the Fourteenth Amendment. *See, e.g., Hicks v. LeBlanc*, 832 Fed. App'x. 836, 840 (5th Cir. 2020); *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013). But the Supreme Court has advised that "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998) (quoting *Albright*, 510 U.S. at 273 (plurality opinion) (incorporation "has substituted, in these areas of criminal procedure, the specific guarantees of the various provisions of the Bill of Rights … for the more generalized language" of the Due Process Clause)); *id.* at 288 (Souter, J., concurring in the judgment)

("the Court has resisted relying on the Due Process Clause when doing so would have duplicated protection that a more specific constitutional provision already bestowed").

Because our case law recognizes an Eighth Amendment right against overdetention, we decline in this instance to identify a duplicative right in the Fourteenth Amendment. *See Figgs*, 829 F.3d at 902 (acknowledging such an Eighth Amendment right); *Armato*, 766 F.3d at 721 (same); *Burke*, 452 F.3d at 669 (same). Doing so would be either redundant with, or worse, disruptive to our Eighth Amendment analysis. As we understand it, Peoples asks us to conclude not only that the Fourteenth Amendment applies to his claim but also that the inquiry should essentially mirror a Fourth Amendment reasonableness test. Considering that the Eighth Amendment test sets a higher bar for plaintiffs, his Eighth Amendment overdetention claim would then collapse into a Fourteenth Amendment claim. That runs counter to the Supreme Court's guidance and the approach we have followed in similar cases.

## B. Eighth Amendment Analysis

With those threshold questions resolved, we may now look at the merits of Peoples's claim. He contends that even under an Eighth Amendment inquiry, the district court was wrong to conclude that he failed to present a triable claim. We disagree.

Under the Eighth Amendment, prison officials "may not act with deliberate indifference toward a known risk that a prisoner is being held beyond his term of incarceration without penological justification." *Whitfield v. Spiller*, 76 F.4th 698, 714 (7th Cir. 2023). "Deliberate indifference requires more than negligence or even gross negligence; a plaintiff must

show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Figgs*, 829 F.3d at 903; *see also Armato*, 766 F.3d at 721. When there is a known risk, a state officer is deliberately indifferent "when he does nothing," *Figgs*, 829 F.3d at 903, or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred, *Burke*, 452 F.3d at 669.

Defendants who pleaded guilty to felonies on certain days of the week were held at the Cook County Jail for several nights before they could be transported to IDOC. A guilty plea on any Friday of the year, for instance, would lead to at least three more nights at the Jail. That was true even for turnarounds, who had received sentences that would lead to their release as soon as they completed IDOC processing. So while Peoples's claim is framed around the unfortunate timing of his plea on the day before Presidents' Day weekend, which resulted in four nights of detention, a similar issue would have occurred with regularity. It can be fairly said that there was a "known risk" that Peoples would be detained beyond the end of his sentence. *Whitfield*, 76 F.4th at 714.

The Sheriff's penological justification for these detentions after sentencing is that they were necessary to comply with IDOC's transfer policy. We have recognized in the context of other overdetention claims that "[r]easonable time must be allowed for such matters as transportation, identity verification, and processing." *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988).[1] It seems that any of these logistical issues alone would not explain the duration of the delay here.

---

[1] *Lewis*, 853 F.2d at 1369, applied the Fourth Amendment to a claim for delayed release by an individual who was not convicted of a crime.

Transportation would be a matter of hours, and IDOC's processing time appears to be quick: for Peoples, it was completed the same day he arrived. The record does not contain a justification for IDOC's transfer policy, although we could imagine that IDOC chooses not to accept transfers on certain days because of limited resources or to avoid backlogs. In any event, regardless of IDOC's reasons for the transfer policy, IDOC is not a defendant in this case. Our inquiry looks only at the Sheriff's penological justification for holding Peoples. To that point, the Sheriff detained Peoples for four days because IDOC would not accept him any sooner.

In light of Illinois law, IDOC policy, and the court's orders, that justification is enough for the Sheriff to prevail. Beyond IDOC's exclusive duty to calculate sentences, IDOC's processing—which includes taking DNA and a photograph, performing a medical check, looking for warrants, and finding a host site for supervision—is important for a successful supervised release. Peoples could not go free from detention until IDOC completed its statutory obligations, which is why the commitment order commanded the Sheriff to "take [Peoples] into custody and deliver him[] to [IDOC]." The Sheriff brought Peoples to IDOC on the first day that IDOC would accept him. As we have said, "there is no basis for an award of damages against executive officials whose policy is to carry out the judge's orders." *Hernandez v. Sheahan*, 455 F.3d 772, 778 (7th Cir. 2006).

All that being so, Peoples still says that the Sheriff did not have to detain him at the Cook County Jail to follow the commitment order. He contends that the Sheriff's 2020 response to the COVID-19 pandemic shows that the Sheriff should

have released him in 2019 while he awaited transfer to the IDOC. This argument is unpersuasive.

For a period during the COVID-19 pandemic, the Sheriff allowed some turnarounds to return home on electronic monitoring after sentencing, and then picked them up for direct transfer to IDOC for processing the next business day. There is factual uncertainty as to whether the Sheriff had discretion to take these measures without further court order. The Sheriff argues that any such release was pursuant to explicit order from a judge, but the record shows that the Cook County Circuit Court used the same sentencing form both when Peoples was sentenced and during the pandemic. Although that form ordered the Sheriff to take a sentenced person into "custody," Peoples was in custody when he was on electronic monitoring pre-plea. Likewise, the Sheriff also says that a judge had to order electronic monitoring before individuals were sent home pending IDOC processing, but Peoples was already being monitored when he was sentenced.

We need not wade any deeper into those factual questions. To start, any temporary procedures that Peoples points to were implemented in response to a global health emergency and do not control our view of the policies governing Peoples's release in 2019. More generally, courts should not micromanage correctional facilities: we "must accord substantial deference to the professional judgment of [correctional] administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). During the peak of the pandemic, we reiterated that "[c]orrectional administrators must have 'substantial discretion to devise reasonable

solutions to the problems they face,' particularly when safety and security interests are at stake." *Mays v. Dart*, 974 F.3d 810, 820–21 (7th Cir. 2020) (quoting *Florence v. Bd. of Chosen Free-holders*, 566 U.S. 318, 326 (2012)).

So even if we were to take the disputed facts fully in Peoples's favor, policy changes adopted in response to the COVID-19 pandemic do not reach back in time to establish that the Sheriff acted with deliberate indifference in 2019. Adopting a policy of release on electronic monitoring before transfer to IDOC might have prevented Peoples and other individuals from spending additional nights at the Jail, but "[t]he existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberatively indifferent." *Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000). Measures implemented during the pandemic may not have been desirable or feasible policy in 2019. *See, e.g.*, *Mays*, 974 F.3d at 814 ("The inherent nature of the [Cook County] Jail presents unique challenges for combatting the spread of COVID-19: it is designed to accommodate large and densely-packed populations.").

At trial, Peoples would have to show that the Sheriff's decision to hold turnarounds in a central location was not a justified penological response to IDOC's transfer hours. If he made that showing, the stringent deliberate indifference standard would still prevent recovery unless Peoples could establish that the Sheriff was essentially criminally reckless in his policy choice. Peoples has not presented a record that indicates he could meet either of these burdens. At most, Peoples puts forward possible reforms to deal with IDOC policy, such as the Sheriff asking the courts to order temporary

release pending transfer or to schedule plea hearings on different days. The proactive efforts he envisions are far afield from the requirements of the Eighth Amendment.

Lastly, Peoples contends that if the Sheriff could not have released him, he should have placed him and other turnarounds in a separate portion of the Cook County Jail rather than with the general population. As described above, we hesitate to intervene in this type of administrative affair. Peoples would need to show that the Sheriff was deliberately indifferent to his substantial risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 832, 839–40 (1994). Beyond general statements that he perceived the Cook County Jail as a violent place, Peoples has not presented evidence that he was in danger there, so this aspect of his claim also fails. *See id.* at 834.

### III. Conclusion

In summary, the district court was correct that the Eighth Amendment governs Peoples's overdetention claim, and that Peoples could not establish the Sheriff violated the Eighth Amendment. Without a constitutional injury, Peoples's Section 1983 claim fails. The judgment of the district court is AFFIRMED.