In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-1335

KEVIN R. CARMODY,

*Plaintiff-Appellant,*

*v.*

BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 12-CV-2249 — **Colin S. Bruce**, *Judge.*

ARGUED SEPTEMBER 28, 2017 — DECIDED JUNE 19, 2018

Before BAUER, MANION, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The University of Illinois fired plaintiff Kevin Carmody from his job as an information technology manager after printed copies of a professor's privileged emails suspiciously ended up in Carmody's home newspaper box. The emails allegedly exposed inconsistencies in the professor's testimony in a separate lawsuit that Carmody was pursuing against a different professor. The univer-

sity learned about the mysterious delivery because Carmody's lawyer in the lawsuit filed the emails with the court. After finding that it was "more probable than not" that Carmody improperly obtained the emails himself, the university fired him. Carmody sued the university's board of trustees and several university officials alleging that he was fired without due process of law both before and after his firing, and that his firing violated an Illinois whistle-blower statute. The district court dismissed the case at the motion to dismiss stage.

In an earlier appeal, we held that Carmody had pleaded a plausible claim that he was fired without pre-termination due process of law, but that his decision to withdraw from the post-termination hearing foreclosed his due process claim based on the post-termination procedures. *Carmody v. Board of Trustees of University of Illinois* (*Carmody I*), 747 F.3d 470 (7th Cir. 2014). We also affirmed dismissal of the state-law claim. On remand, the district court granted summary judgment for some defendants, *Carmody v. Board of Trustees of University of Illinois* (*Carmody II*), No. 12-CV-2249, 2015 WL 13675382 (C.D. Ill. Nov. 17, 2015), and Carmody lost at trial on his claim against three remaining defendants for denial of due process of law before he was fired. In this new appeal, Carmody raises seven issues—four regarding summary judgment and three pre-trial evidentiary issues. He does not challenge the conduct of the trial or the verdict on the pre-termination due process claim. We find no error and affirm the judgment of the district court.

I.   *Summary Judgment Issues*

The district court granted summary judgment for four individual defendants and the board of trustees. *Carmody II*,

2015 WL 13675382, at *10. We review summary judgment rulings *de novo*, construing the evidence in the light most favorable to Carmody as the non-moving party and drawing all reasonable inferences in his favor. See *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017), citing *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). Nevertheless, inferences "that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017), quoting *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Estate of Simpson*, 863 F.3d at 745, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A. *Summary Judgment for Pang and Adesida*

The district court granted summary judgment in favor of Carmody's immediate supervisor, Jong Shi-Pang, and the dean of the college where Carmody worked, Ilesanmi Adesida, because there was no evidence that those defendants were personally involved in the alleged pre-termination violation of Carmody's due process rights. *Carmody II*, 2015 WL 13675382, at *7–8. "Individual liability pursuant to § 1983 'requires personal involvement in the alleged constitutional deprivation.'" *Estate of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017), quoting *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). "The plaintiff must demonstrate a causal con-

nection between (1) the sued officials and (2) the alleged misconduct." *Colbert*, 851 F.3d at 657, citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

Carmody argues that Pang contributed to his dismissal by providing false evidence to university investigators. According to investigators' notes from their interview with Pang, Carmody did not tell Pang about possessing the emails. But Carmody testified that he did tell Pang about the emails. Carmody argues that the conflicting evidence matters because the university terminated him based, at least in part, on an alleged failure to inform his supervisor of a breach of network security.

This factual dispute does not affect Carmody's constitutional claim for denial of due process before he was fired. The question on Pang's summary judgment motion is whether Pang violated Carmody's constitutional rights. Pang made his statement to investigators as a witness. As a witness, he had no responsibility for the critical components of due process: whether Carmody received notice of the charges, an explanation of the evidence, and a chance to present his story before he was fired. See *Carmody I*, 747 F.3d at 475, citing *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Because Carmody does not point to any evidence that Pang participated in the alleged denial of pre-termination due process, the district court properly granted summary judgment for Pang. See, e.g., *Estate of Perry*, 872 F.3d at 459 (affirming summary judgment for defendants where § 1983 plaintiff failed to show personal involvement); see also *Schultz v. Baumgart*, 738 F.2d 231, 239 (7th Cir. 1984) (affirming summary judgment for some individual defendants because "the claimed deprivation could not have occurred at their direction or with their

express consent"), citing *Crowder v. Lash*, 687 F.2d 996, 1006 (7th Cir. 1982).

Dean Adesida signed the pre-termination letter that outlined the charges against Carmody. Carmody argues that summary judgment for Adesida was improper because "additional evidence" indicates that Adesida was involved in the investigation. But Carmody supports that argument by relying on documents that were not before the district court. Most of Carmody's appellate appendix consists of documents obtained outside of discovery. We will not consider those documents on appeal because Federal Rule of Appellate Procedure 10(e) provides no basis for doing so. See Fed. R. App. P. 10(e)(2) (allowing court of appeals to supplement record only where evidence "is omitted from or misstated in the record by error or accident"); *Midwest Fence Corp. v. United States Dep't of Transp.*, 840 F.3d 932, 946 (7th Cir. 2016) ("Rule 10(e) does not give this court authority to admit on appeal any document which was not made a part of the record in the district court."), quoting *Borden, Inc. v. Federal Trade Comm'n*, 495 F.2d 785, 788 (7th Cir. 1974); see also *Hart v. Sheahan*, 396 F.3d 887, 894 (7th Cir. 2005) ("To present new evidence at the appeal stage is improper and in appropriate cases sanctionable."), citing *Youker v. Schoenenberger*, 22 F.3d 163, 169 (7th Cir. 1994).

The evidence that is actually in the record supports the grant of summary judgment. Adesida testified that he accepted the content of the letter as true, did not think he needed to confirm the truth of the facts because there would be an investigation, and had no input on how that investigation would be conducted. On this record, Adesida could not be held individually responsible for a pre-termination denial of due process of law.

B. *Summary Judgment for Hogan and Cole*

Summary judgment was also appropriate for defendants Michael Hogan, the president of the university when Carmody was fired, and Elyne Cole, the associate provost who supervised the investigators. Carmody points to no evidence that either official was personally involved in his termination, but relies instead on conjecture. He argues that Hogan must have known about the termination. But Carmody did not dispute that Hogan had no knowledge of the charges against Carmody until this lawsuit was filed.

As for Cole, Carmody argues that she supervised the investigators and that the termination proceedings likely required her approval. Without more evidence of her involvement, this argument amounts to an argument for *respondeat superior* liability, but that doctrine does not apply under § 1983. E.g., *Lennon v. City of Carmel*, 865 F.3d 503, 507–08 (7th Cir. 2017) ("there is no vicarious liability in a suit under section 1983"); see also *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (supervisory liability requires showing "supervisor was personally involved in the constitutional violation," which "means the supervisor 'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see.'" (alteration in original), quoting *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)).

C. *Summary Judgment for the Board of Trustees*

Summary judgment for the board of trustees as an entity was also proper. The Eleventh Amendment to the Constitution bars the claims against the board itself, and § 1983 does not authorize such claims. The Eleventh Amendment bars

most claims in federal court against a state that does not consent to the suit. E.g., *Porco v. Trustees of Indiana University*, 453 F.3d 390, 394–95 (7th Cir. 2006), citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). (We say "most" because suits against non-consenting states may be authorized under legislation implementing later amendments to the Constitution, such as Title VII of the Civil Rights Act of 1964, as amended. See *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *Nanda v. Board of Trustees of University of Illinois*, 303 F.3d 817, 823 (7th Cir. 2002).) This constitutional immunity extends to the Board of Trustees of the University of Illinois. E.g., *Kroll v. Board of Trustees of University of Illinois*, 934 F.2d 904, 908 (7th Cir. 1991), citing *Cannon v. University of Health Sciences/Chicago Medical School*, 710 F.2d 351, 356–57 (7th Cir. 1983). Also, Carmody did not try to use the *Ex parte Young* device of suing individual state officials for injunctive relief because he sued the board, not individual members of the board in their official capacities. See *Power v. Summers*, 226 F.3d 815, 819 (7th Cir. 2000) (noting that § 1983 permits, and Eleventh Amendment does not bar, official-capacity suits against state officials seeking only injunctive relief), citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989), and citing *Ex parte Young*, 209 U.S. 123 (1908).

Apart from the Eleventh Amendment, the Supreme Court has held that a state is not a "person" who can be sued under § 1983. *Will*, 491 U.S. 58; accord, *Kaimowitz v. Board of Trustees of University of Illinois*, 951 F.2d 765, 767–68 (7th Cir. 1991) (affirming dismissal of § 1983 claim because board "is not a person within the meaning of § 1983 and therefore not subject to suits brought under § 1983"); see also *Kroll*, 934 F.2d at 910 n.7 (noting, as alternative basis for dismissal, that a "state agency

with eleventh amendment immunity … is not a 'person' within the meaning of section 1983," citing *Will*, 491 U.S. 58).

D. *Denial of Carmody's Own Motion for Summary Judgment*

Carmody argues that the district court erred by denying his own motion for summary judgment regarding his pre-termination due process claim. We cannot review that denial because Carmody's claim went to trial. See, e.g., *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 823 (7th Cir. 2016) ("denial of summary judgment is an interlocutory matter subsumed by a final judgment"). "After trial, the summary judgment denial is ancient history and not subject to appeal." *Id.* at 823–24.

There is a "controversial exception" to this general rule that may allow review of "purely legal issues" raised in pretrial motions for summary judgment. *Id.* at 824. To the extent that exception is viable in theory, it could not apply here. Carmody is not arguing a legal issue. Instead, he argues only factual issues, about the reasons for his dismissal, the actions of investigators, and his state of mind in responding to the university's charges. He contends that, in light of these issues, the university failed to show a genuine issue of material fact about the constitutionality of the pre-termination proceedings. To make these arguments, Carmody relies on new evidence not before the district court. Whether the defendants raised a genuine issue of material fact about the pre-termination proceedings is not the sort of question of law that *might* permit appellate review of the denial of summary judgment. See *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016) ("'question of law' typically concerns 'the meaning of a statutory or constitutional provision, regulation, or common law doctrine

rather than … whether the party opposing summary judgment had raised a genuine issue of material fact'", quoting *Ahrenholz v. Board of Trustees of University of Illinois*, 219 F.3d 674, 676–77 (7th Cir. 2000) (addressing "question of law" as used in 28 U.S.C. § 1292(b))). Accordingly, there is no basis here for appellate review of the denial of Carmody's own motion for summary judgment.[1]

II. *Pre-Trial Evidentiary Issues*

  A. *Inadvertently Produced Privileged Document*

We now turn to several issues concerning the evidence available to Carmody at trial, the first of which concerns the district court's pre-trial ruling that Carmody could not offer as evidence a document protected by the attorney-client privilege that the defense had inadvertently turned over to Carmody in discovery. The document in question was a memorandum dated June 30, 2010 from associate university counsel Rhonda Perry to Dean Adesida. We refer to it here as "the Perry memorandum."

Federal Rule of Evidence 502(b) governs inadvertent disclosures of privileged communications or information in federal proceedings. Rule 502(b) provides that disclosure does not waive the privilege if (1) the disclosure was "inadvertent;

---

[1]To preserve legal arguments about the sufficiency of the evidence after the denial of a motion for summary judgment and a loss at trial, a party must make Rule 50(a) and 50(b) motions at trial. See *Empress Casino*, 831 F.3d at 823 (failure to raise a particular sufficiency-of-the-evidence argument in Rule 50(a) and 50(b) motions blocks that argument on appeal), citing *Ortiz v. Jordan*, 562 U.S. 180, 189 (2011); *Brown*, 827 F.3d at 613–14 (same). By failing to make either motion at all, Carmody failed to preserve any potential legal issues.

(2) the holder of the privilege … took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error.ʺ The district court did not err by finding that the disclosure of the Perry memorandum did not waive the privilege.

Outside counsel for the university received thousands of documents from the university. They reviewed those documents and then produced hundreds of documents to Carmody and his lawyer for viewing and copying. The Perry memorandum, however, was among the hundreds of documents produced. During the next two months, the university's outside counsel sent Carmody's lawyer two sets of privilege logs. The university's lawyer represented to the district court that his firm logged the Perry memorandum as a "legal memo" attached to one email and as an "outline" attached to another email but did not otherwise identify it. The logged emails were either internal or between the university and its outside counsel or outside counsel's staff.

The Perry memorandum bore the bold, all-caps heading: "ATTORNEY-CLIENT COMMUNICATION *PRIVILEGED AND CONFIDENTIAL.*" Carmody and/or his lawyer photographed the document with a cell phone and stayed silent for about a year. The parties dispute whether Carmody flagged the document for copying.

At Adesida's deposition—about one year after the production—Carmody's lawyer broke the silence and tried to surprise Adesida and the university with the document. Carmody's lawyer told the university's outside counsel that the document "was one that we wanted you to copy" and tried to question Adesida about it. The university's outside counsel said that the document was "inadvertently disclosed" and

that the privilege had not been waived, instructed Adesida not to answer questions about the substance of the document, and requested that Carmody's lawyer destroy all copies of the Perry memorandum in his possession. One week after the deposition, the university's outside counsel wrote a letter to Carmody's lawyer again asking to "claw-back" the Perry memorandum. Carmody's lawyer filed the Perry memorandum as an exhibit to Carmody's motion for summary judgment. After counsel were unable to agree on what to do, the university filed a prompt motion to compel plaintiff's counsel to return the Perry memorandum and to bar plaintiff from using it as evidence. The district court granted the motion.

We review findings of fact on a claim of attorney-client privilege for clear error. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 387 (7th Cir. 2008), citing *Bland v. Fiatallis North America, Inc.*, 401 F.3d 779, 787 (7th Cir. 2005). The Perry memorandum was clearly privileged. "Communications from attorney to client are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *Id.* at 388, quoting *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990). Carmody argues that the Perry memorandum was not privileged on the theory that it does not contain information regarding communications between an attorney and a client. But the document itself is an attorney-client communication, and it contains legal advice—specifically, recommendations regarding the investigation of the conduct that led to Carmody's termination.

Because the Perry memorandum was privileged, we apply the three-element test of Rule 502(b) to determine whether disclosure of the document operates as a waiver. A disclosure is not a waiver if:

(1) the disclosure is inadvertent;

(2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and

(3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b).[2]

The district court correctly found that the defendants did not waive the privilege. First, the production of the privileged document was clearly inadvertent; there is no indication that defendants intended to waive the privilege or to produce the document. See *Viamedia, Inc. v. Comcast Corp.*, No. 16-cv-5486, 2017 WL 2834535, at *6 (N.D. Ill. June 30, 2017) (St. Eve., J.). Out of the hundreds of documents produced to Carmody and out of all the documents logged in the university's privilege logs, this was apparently the only one to slip through. That single slip indicates an unfortunate but inadvertent mistake rather than a casual, produce-first, review-later approach.

---

[2] Before Rule 502 was adopted, we addressed waiver by inadvertent disclosure by considering "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Judson Atkinson Candies*, 529 F.3d at 388, quoting *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 116–17 (N.D. Ill. 1996). Rule 502 superseded several conflicting approaches to inadvertent disclosures, but the advisory committee notes endorsed the factors in *Judson Atkinson Candies*. Fed. R. Evid. 502(b) advisory committee's note to 2008 enactment ("The rule is flexible enough to accommodate any of those listed factors."). So cases decided before adoption of Rule 502 "remain pertinent to provide examples." 8 Wright & Miller, Federal Practice & Procedure § 2016.3 (3d ed.).

The district court also found that the defendants took reasonable steps to prevent the disclosure, focusing on the fact that just one privileged document slipped through. On this record, that finding was not clearly erroneous, even though the scale of this document production lay toward the modest end of the spectrum in modern discovery practice. Carmody acknowledges that some review took place to winnow the thousands of documents down to the several hundred produced and to avoid production of privileged documents. The fact that the Perry memorandum was referenced on the privilege logs reflects that winnowing and screening for privileged documents. The district court apparently inferred that the university's review procedures were reasonable, albeit imperfect, and credited the university's representations in its motion to compel that it took steps to review the documents for privilege. That view was not clearly erroneous. The university lawyer's oversight was surely a doozy, but the point of Rule 502(b) is to protect client's confidences from their lawyers' human errors like this one.

The district court also found that the university, as holder of the privilege, took prompt and reasonable steps to rectify the disclosure. The university's outside counsel immediately tried to "claw-back" the Perry memorandum upon opposing counsel's attempt to use it. At Adesida's deposition, the university's outside counsel immediately claimed inadvertence, instructed Adesida not to answer questions about the document, and requested that Carmody's lawyer destroy all copies of the document in his possession. The lawyer followed up with a letter and, upon reaching an impasse with Carmody's lawyer, filed the appropriate motion to compel return of the document and to bar its use as evidence. An element of basic

fairness here also weighs against Carmody because of his lawyer's tactics. He or his lawyer surreptitiously photographed the document, stayed silent for a year, tried to surprise the university with the document at a deposition, and then made the document public by attaching it as an exhibit to a motion for summary judgment after defense counsel had demanded its return but before the court could resolve the issue. Cf. *Robertson v. Yamaha Motor Corp.*, 143 F.R.D. 194, 198 (S.D. Ill. 1992) (privilege had not been waived when counsel who received inadvertently-produced privileged documents should have returned them as soon as they recognized what they had rather than forward them).

### B.  *Exclusion of Evidence of Pre-Termination Bias*

Carmody argues next that the district court erred by preventing him from presenting evidence of pre-termination bias. He claims that the district court improperly excluded the privileged Perry memorandum and excluded "other evidence" of pre-termination bias. The university reads this argument as an appeal from the district court's grant of a motion *in limine* excluding evidence of pre-termination bias. We review the grant of a motion *in limine* for abuse of discretion. *Empire Bucket, Inc. v. Contractors Cargo Co.*, 739 F.3d 1068, 1071 (7th Cir. 2014), citing *Thompson v. City of Chicago*, 472 F.3d 444, 453 (7th Cir. 2006).

Carmody failed to preserve this argument for appeal. See *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1026 (7th Cir. 2016) (failure to preserve alleged error via failure to make offer of proof of expected testimony), citing *Wilson v. City of Chicago*, 758 F.3d 875, 885 (7th Cir. 2014), and Fed. R. Evid. 103(a)(2). He did not make an offer of proof or otherwise explain the substance of the evidence he sought to present. Cf.

Fed. R. Evid. 103(a)(2). Rule 103(b) provides that, to preserve the claim for appeal, a party need not renew an objection or offer of proof after the court "definitively" rules on the motion *in limine*. E.g., *Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008) (definitive denial of motion *in limine* preserved issue for appeal). But to preserve the issue, the party must have "otherwise satisfied the objection or offer of proof requirements of Rule 103(a)." Fed. R. Evid. 103, advisory committee's note to 2000 amendment. Carmody did not do that. He referred, without elaboration, to "new evidence" of bias and argued it would be relevant. That is not enough to preserve the issue for appeal.

### C. *Post-Termination Deprivation Theory*

Four days before trial, Carmody filed a motion for reconsideration and for leave to file an amended complaint. He argued that new evidence obtained through requests under the state public-records law warranted resurrecting both his due process claim based on the post-termination hearing and his whistleblower claim. The district court denied the motion, saying it had "no authority" to reconsider our affirmance of the dismissal of those claims in *Carmody I*. On appeal, Carmody argues that the district court erred in three ways: (1) failing to allow evidence of post-termination bias; (2) failing to order a new post-termination hearing; and (3) failing to reinstate the post-termination claims. The district court correctly refused to reopen those claims.

The issue involves two related doctrines: the mandate rule and the law-of-the-case doctrine. "The mandate rule requires a lower court to adhere to the commands of a higher court on remand." *United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995), citing *In re Continental Illinois Securities Litigation*, 985

F.2d 867, 869 (7th Cir. 1993). "The law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances." *United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014), quoting *Polland*, 56 F.3d at 779. Both the mandate rule and the law-of-the-case doctrine are strong, but they can bend in sufficiently compelling circumstances. The mandate rule may give way "in light of subsequent factual discoveries or changes in the law." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005), quoting *Barrow v. Falck*, 11 F.3d 729, 731 (7th Cir. 1993); see also 18B Wright & Miller, Federal Practice and Procedure § 4478.3 (2d ed.) (noting that "a compelling showing" or "changed circumstances" that are "clear and compelling" "may justify departure from the mandate"). And the law-of-the-case doctrine may yield "if an intervening change in the law, or some other special circumstance, warrants reexamining the claim." *Sears*, 417 F.3d at 796, quoting *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993). Those circumstances may include, but are not limited to, "substantial new evidence introduced after the first review." *Kathrein v. City of Evanston*, 752 F.3d 680, 685 (7th Cir. 2014), quoting *Chicago & North Western Transp. Co. v. United States*, 574 F.2d 926, 930 (7th Cir. 1978).

As a matter of law, therefore, the district court had discretion, at least in theory, to reconsider the earlier dismissal. Upon our remand, the earlier final judgment became interlocutory. What had been a judgment on all claims in the case became a judgment on only some claims. And without a Rule 54 certification, that judgment was not final. See Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment ("interlocutory judgments are not brought within the restrictions of the rule"); *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir.

2015) (distinguishing Rule 60(b) and noting that district court had discretion to reconsider previous summary judgment ruling before final judgment); see also *Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000) (distinguishing judgments from rulings, which are "constrained only by the doctrine of the law of the case").

That theoretical power made no practical difference here. Carmody did not present a compelling reason to revisit the earlier rulings after our remand. His new evidence falls well short of the high bar required to bend the law-of-the-case and mandate rules. He argues that the new evidence shows that the post-termination hearing officer was not neutral because he had ex parte communications with university staff and deleted exculpatory information from drafts of the final hearing report. The dispositive fact remains. Carmody bowed out of the post-termination proceedings. *Carmody I*, 747 F.3d at 479. While the evidence Carmody obtained through his public record requests might have bolstered his case, it is not the kind of compelling new evidence that would warrant reconsidering the dismissal of the other claims.

The judgment of the district court is

AFFIRMED.