In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 24-2080

LEON BARNES,

*Plaintiff-Appellant,*

*v.*

WEXFORD HEALTH SOURCES, INC.,
EVARISTO P. AGUINALDO, JR.,
and ESTATE OF SALEH OBAISI

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-cv-8959 — **Franklin U. Valderrama**, *Judge.*

_____

ARGUED APRIL 9, 2025 — DECIDED JUNE 1, 2026

_____

Before EASTERBROOK, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* Leon Barnes, an inmate in the custody of the Illinois Department of Corrections (IDOC), suffered from internal prolapsed hemorrhoids during his time at one of the state's prison facilities. After receiving a

hemorrhoidectomy, Barnes launched this lawsuit under 42 U.S.C. § 1983 against Wexford Health Sources, Inc. (Wexford), the Illinois Department of Corrections's contracted medical provider, Doctor Evaristo Aguinaldo, M.D., and the Independent Executor of the Estate of Doctor Saleh Obaisi, M.D. (collectively Defendants).[1] Barnes contends Defendants violated his Eighth Amendment rights because they were deliberately indifferent to his serious medical condition. The district court granted summary judgment to Defendants, holding Barnes failed to submit sufficient evidence for a jury to find in his favor.

Barnes appeals, arguing the district court erred in granting summary judgment to Defendants. In his view, the actions, or inactions, of Dr. Aguinaldo and Dr. Obaisi delayed his preferred care—receiving surgery for his hemorrhoids. He also alleges that Wexford's collegial review and referral processes aided in the delays by the doctors. We disagree and affirm.

## I.   BACKGROUND

### A.  Factual Background

Barnes is a prisoner who has been a resident inmate throughout the Illinois Prison system since 2005. During the relevant time of the events underlying his lawsuit, Barnes was housed at Stateville Correctional Center (Stateville) from April 6, 2016, to July 25, 2018, and was then transferred to Hill Correctional Center (Hill). While housed at Stateville, Barnes suffered from prolapsed hemorrhoids, which he started experiencing in 2013.

---

[1] Dr. Obaisi passed away in late 2017 and an estate was opened by his Executor.

Wexford contracts with the Illinois Department of Corrections to provide medical, dental, vision, pharmaceutical, and mental health services for prisoners at Stateville and Hill. Wexford arranges and provides these services onsite at the prison institution and, as necessary, offsite at local hospitals, outpatient facilities, and consultative physician offices. When an onsite physician refers an inmate for care outside of the correctional institution, the referral goes through a process known as "collegial review." Collegial review takes place during a scheduled conference call between Wexford's corporate director of utilization management and, at a minimum, the institution's medical director.

Occasionally, the onsite physician requesting care outside of the correctional institution as well as other Wexford physicians attend the call. During the conference call, a Stateville representative seeks approval to have an inmate referred out to an offsite provider for services. The request is approved or denied. The offsite providers, for their part, can refuse or accept the inmate for care, and if refused, Wexford has no authority to force them to accept the inmate.

On July 29, 2016, Barnes was seen by Dr. Aguinaldo—an onsite physician at Stateville—complaining of hemorrhoids. Dr. Aguinaldo noted Barnes was not in distress, conducted a rectal exam, found no external hemorrhoids, and conducted an occult blood test, which was negative for blood in Barnes's stool. About two months later, Barnes was seen by Dr. Obaisi, who prescribed Barnes a fiber supplement called Fiberlax for

his hemorrhoids. While Barnes was at Stateville, Dr. Obaisi also served as the medical director.[2]

On January 10, 2017, Barnes saw Dr. Obaisi again, complaining of rectal bleeding and pain during bowel movements. Dr. Obaisi sought collegial review for Barnes to receive an evaluation of colorectal anal fissure and bleeding, and Wexford approved the collegial review on January 18, 2017. On June 19, 2017, Barnes was sent out on a medical furlough to the University of Illinois Hospital in Chicago (UIC) where he saw Dr. Nordenstam, a colorectal surgeon and professor of surgery, who noted a prolapse of Barnes's internal hemorrhoids. Barnes was scheduled for a radiological exam and prescribed a different fiber supplement, Metamucil.

On June 27, 2017, Dr. Obaisi sought collegial review of Barnes's radiological exam, and it was approved by Wexford the same day. On September 15, 2017, Barnes had his radiological exam, which revealed that he had mild to moderate rectal distention on evacuation. The diagnosis was prolapsing internal hemorrhoids but no rectal prolapse. Barnes had been

---

[2] It is undisputed that a person can take fiber supplements, or consume fiber and drink lots of fluids, to reduce pain associated with all forms of hemorrhoids. Before the district court, Barnes attempted to dispute this fact but agreed "such treatment may be sufficient for" certain hemorrhoids and that for more severe hemorrhoids "more aggressive treatment is likely necessary." Given Barnes failed to cite evidence in support of his response, the district court determined Barnes failed to comply with the Northern District of Illinois's Local Rule 56.1 and deemed this fact admitted. *Barnes v. Wexford Health Sources, Inc.*, No. 17-cv-8959, 2022 WL 20288624, at *2, n.6 (N.D. Ill. Nov 23, 2022). On appeal, Barnes does not contest the district court's decision to do so; therefore, we too deem the fact admitted. *See, e.g., Flint v. City of Belvidere*, 791 F.3d 764, 766–67 (7th Cir. 2015).

straining with bowel movements, which made the hemorrhoids prolapse worse.

That same month, Barnes was sent out to UIC for a follow-up with Dr. Nordenstam, who recommended pelvic floor/biofeedback therapy before he would consider Barnes for a hemorrhoidectomy—a surgical procedure to remove hemorrhoids. Dr. Nordenstam did not want to perform the surgery before Barnes completed pelvic floor therapy because he believed surgery would not provide a long-term solution if Barnes was not having proper bowel movements. Dr. Nordenstam also did not place a timeline on when the surgery needed to happen.

The day after Barnes's follow-up appointment with Dr. Nordenstam, on September 26, 2017, Dr. Obaisi signed a form titled "Illinois Department of Corrections Medical Special Services Referral and Report" seeking collegial review for "Rectal biofeedback Training at UIC Colorectal clinic [with] Dr. Nordenstam" for Barnes. Wexford approved the referral on October 3, 2017. But after the therapy was approved through collegial review, UIC chose not to accept Barnes for the therapy, as was within its discretion.

On October 19, 2017, Barnes saw Dr. Aguinaldo for complaints of strep throat and other cold-like symptoms but did not complain of hemorrhoid issues. Dr. Aguinaldo saw Barnes again on March 6, 2018, to determine whether to renew Barnes's shower permit. Dr. Aguinaldo noted Barnes's history of rectal obstruction and his prior appointment at UIC in September 2017 for the issue. Dr. Aguinaldo renewed the shower permit and issued Barnes an ice permit.

On April 9, 2018, Dr. Okezie—the medical professional who served as medical director at Stateville after Dr. Obaisi—issued a referral to collegial review for pelvic floor therapy for Barnes at UIC which was denied because UIC would not accept Barnes for this therapy.

A few months later, on August 14, 2018, after Barnes was transferred to Hill, Dr. Bautista—a traveling medical director—issued another referral to collegial review for pelvic floor therapy which Wexford approved. Barnes was then sent out on medical furlough on September 11, 2018, at a different medical facility—Cottage Rehabilitation and Sports Medicine—to begin pelvic floor therapy. Barnes completed pelvic floor therapy at Cottage on October 23, 2018, and on March 25, 2019, Dr. Matthew at UIC recommended Barnes undergo a hemorrhoidectomy. Wexford approved the surgery on April 4, 2019, and Barnes underwent the hemorrhoidectomy on April 16, 2019.

**B. Procedural History**

Barnes filed suit under 42 U.S.C. § 1983 against Dr. Obaisi and Dr. Aguinaldo, alleging Dr. Obaisi and Dr. Aguinaldo were deliberately indifferent to his prolapsed hemorrhoids in violation of the Eighth Amendment. Barnes also asserted a *Monell* claim against Wexford, contending its actions unconstitutionally delayed his hemorrhoidectomy. After discovery, Defendants moved for summary judgment.

In ruling on the motion, the district court found for Defendants on Barnes's claims of deliberate indifference and on his *Monell* claim against Wexford due to his failure to submit evidence to support his claims. Specifically, the district court found Barnes failed to submit evidence that any of

Dr. Obaisi's actions evinced deliberate indifference. It also found that Barnes needed verifying medical evidence that a delay of pelvic floor therapy caused him harm, but he failed to put forth such evidence. As for Dr. Aguinaldo, the court found Barnes could not establish deliberate indifference. Finally, it found no *Monell* claim because Barnes failed to show Wexford's actions—or the collegial review process—was the moving force behind any constitutional violation.

## II.   ANALYSIS

On appeal, Barnes challenges the district court's grant of summary judgment to Defendants. He contends Dr. Obaisi and Dr. Aguinaldo were deliberately indifferent to his prolapsed hemorrhoids. He also maintains that he asserted a proper *Monell* claim to survive summary judgment.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant, Barnes, and drawing all reasonable inferences in his favor. *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018). To that end, Barnes, the nonmovant must "produc[e] evidence that is more than 'merely colorable,' [but supports] that there is a genuine issue for trial." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Inferences "that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Carmody*, 893 F.3d at 401 (quoting *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017)). All said, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(a)). A dispute of fact is genuine "if the evidence is

such that a reasonable jury could return a verdict for the non-moving party." *Lord v. Beahm*, 952 F.3d 902, 903 (7th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248).

### A. Deliberate Indifference

The Eighth Amendment "obligates prison officials to provide medical care to prisoners in their custody." *Clemons v. Wexford Health Sources, Inc.*, 106 F.4th 628, 635 (7th Cir. 2024) (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 234 (7th Cir. 2021)). So, "a prison official's 'deliberate indifference to serious medical needs of prisoners' violates the Eighth Amendment." *Id.* (alteration accepted) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661–62 (7th Cir. 2016)). Evaluating such a claim requires us to "perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition[] and then determining whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)).

The first step is not in dispute, leaving only the second. "Deliberate indifference is a subjective standard that is met if a defendant either 'knows of and disregards an excessive risk to inmate health or safety' or 'is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he draws the inference.'" *Jackson v. Esser*, 105 F.4th 948, 961 (7th Cir. 2024) (quoting *Johnson v. Dominguez*, 5 F.4th 818, 824–25 (7th Cir. 2021)). Therefore, in undertaking this inquiry, we consider "the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Riley v. Waterman*, 126 F.4th 1287, 1295 (7th Cir. 2025) (quoting *Petties*, 836 F.3d at 728).

"Where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently." *Clemons*, 106 F.4th at 635 (alteration accepted) (quoting *Dean*, 18 F.4th at 241). Moreover, evidence indicating "medical negligence, a mistake in professional judgment, or even objective recklessness" does not suffice. *Id.* A prisoner must instead "demonstrate that the medical professional's response was 'so inadequate that it demonstrated an absence of professional judgment.'" *Jackson*, 105 F.4th at 961–62 (quoting *White v. Woods*, 48 F.4th 853, 862 (7th Cir. 2022)).

But on the other hand, "where evidence exists that the defendants knew better than to make the medical decisions that they did, a jury should decide whether or not the defendants were actually ignorant to the risk of the harm that they caused." *Clemons*, 106 F.4th at 635 (alteration accepted) (quoting *Petties*, 836 F.3d at 730–31). To that point, evidence revealing the defendant knew not to make a medical decision can include "the obviousness of the risk from a particular course of medical treatment; the defendant's persistence in a course of treatment known to be ineffective; or proof that the defendant's treatment decision departed so radically from accepted professional judgment, practice, or standards." *Id.* at 635–36 (quoting *Whiting*, 839 F.3d at 663).

### 1. Dr. Obaisi

Barnes asserts the district court failed to credit his testimony as admissible evidence that Dr. Obaisi was deliberately indifferent. He testified that Dr. Obaisi

> [K]new [the] pain and suffering I was in, knew [of] the medical condition of prolapsing

> hemorrhoid. He refused to treat me and refused
> to approve treatment for me. Obaisi also con-
> doned and followed all of [Wexford's] proce-
> dures, which is what helped him . . . which
> caused him as part of the reason not to approve
> the treatment for me.[3]

In Barnes's view, his testimony shows that Dr. Obaisi did not act swiftly enough and delayed his hemorrhoidectomy. But Barnes's testimony here is not enough at summary judgment to show that Dr. Obaisi's action or inaction constituted deliberate indifference.

To the extent that Barnes asserts his testimony shows nothing was done for him *at all*, the evidence reveals the opposite, and he cannot prove deliberate indifference on the grounds that he wanted Dr. Obaisi to take some other course of action than he took so long as the action was based on medical judgment. *Clemons*, 106 F.4th at 636–37; *Arce v. Wexford Health Sources Inc.*, 75 F.4th 673, 681 (7th Cir. 2023). The evidence here demonstrates Dr. Obaisi exercised medical judgment when he prescribed Barnes fiber supplements to ease the pain of his hemorrhoids until his referrals were approved by the collegial review board. *Clemons*, 106 F.4th at 636–37. Prescribing fiber supplements is a common treatment protocol to help a patient avoid pain associated with having hemorrhoids—as Dr. Nordenstam testified.[4] Based on this, we cannot say that Dr. Obaisi was deliberately indifferent on the grounds that he prescribed medication commonly used to

---

[3] Dkt. 115-1, Barnes's Depo., at 40.

[4] Dkt. 115-5, Dr. Nordenstam's Depo., at 8.

relieve hemorrhoid pain. *See id.* at 637 (noting that deliberate indifference must show "treatment decisions so unacceptable that 'no minimally competent professional would have so responded under those circumstances'" (quoting *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008))).

Next, Barnes argues the district court, in rejecting his deliberate indifference claim against Dr. Obaisi, improperly determined medical evidence was necessary to evaluate whether the delay in surgery itself caused him continued pain. But this is a nonstarter.

"In cases such as this one—where the plaintiff alleges the defendant delayed, rather than denied, medical treatment—we have required that the plaintiff present 'verifying medical evidence' that the delay, and not the underlying condition, caused some harm." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)). Barnes has failed to make that requisite showing here. He did not put forth any verifying medical evidence to support his claim. He only submits that he had an internal prolapsed hemorrhoid and that he was still in pain even though he was taking the fiber supplements. That is not enough for his claim to survive summary judgment. Evidence demonstrating the defendant reasonably responded to the risk, even if unsuccessfully preventing the harm, "negates an assertion of deliberate indifference." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (quoting *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022)).

To be sure, we have found that a delay in necessary care for a prisoner's medical condition causing the prisoner prolonged pain can stand as an act of deliberate indifference. *Gomez v. Randle*, 680 F.3d 859, 865–66 (7th Cir. 2012) (holding

that the plaintiff stated an Eighth Amendment deliberate indifference claim because "even though [the four-day] delay [in treatment for plaintiff's infected gunshot wound] did not exacerbate [the plaintiff's] injury, he experienced prolonged, unnecessary pain as a result of a readily treatable condition"); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (a plaintiff who dislocated his finger, and suffered immense pain, and was denied treatment for two days properly presented a deliberate-indifference claim). But because a showing of a delay, in isolation, is insufficient to support a deliberate indifference claim, a prisoner must offer verifying medical evidence that shows that the *delay* was detrimental. *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) (finding that "expert testimony that the [prisoner] suffered because of a delay in treatment" could serve as verifying medical evidence). Thus, "evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him." *Id.* (citation omitted); *see Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (affirming summary judgment when plaintiff failed to show any evidence that a one-hour delay in treatment was detrimental to him).

Again, Barnes did not offer verifying medical evidence here, so this argument fails.

Finally, Barnes also contends Dr. Obaisi's failure to promptly get him the treatment Dr. Nordenstam prescribed, *i.e.*, pelvic floor therapy and the resultant hemorrhoidectomy, constitutes a delay. Fatal to his arguments, Barnes relies on nothing more than his diagnosis and ultimate treatment to support his argument the delay caused him harm, but that alone cannot evidence harm stemming from the delay itself.

*See Williams*, 491 F.3d at 715. The record, too, undermines Barnes's position. Dr. Obaisi gave Barnes a fiber supplement to help relieve his pain while awaiting approval to send him out for evaluation and treatment. Dr. Nordenstam also prescribed Barnes a fiber supplement supporting that Dr. Obaisi responded to Barnes's hemorrhoid issue at least in the same way as Dr. Nordenstam. *See Walker*, 940 F.3d at 965; *Clemons*, 106 F.4th at 636–37 (recognizing that symmetry of treatment by multiple professionals undermines a claim of deliberate indifference). As stated above, that evinces Dr. Obasi "responded reasonably in treating" Barnes's "condition—even with the delay." *Clemons*, 106 F.4th at 636.

Additionally, Dr. Obaisi ordered Barnes a bland diet at his request and referred Barnes out for offsite evaluation and multiple other medical follow-ups based on the offsite physicians' recommendations. *See Walker*, 940 F.3d at 965 (finding no deliberate indifference where medical provider "made referrals and re-referrals when necessary, all the while treating [the plaintiff's] symptoms"). No evidence demonstrates Dr. Obaisi had any role in Barnes not receiving physical therapy or surgery after he referred Barnes out for treatment. *See id.* at 966 (recognizing that lack of medical provider's personal involvement in treatment delays counsels against a finding of deliberate indifference). And more than that, Dr. Nordenstam attested that he, as the offsite physician, did not place a timeline on when Barnes needed to have his hemorrhoidectomy. That illustrates Dr. Obaisi did not cause any delay of Barnes's pelvic floor therapy and surgery. Without evidence showing that the *delay* in treatment for Barnes's continued hemorrhoids harmed him, we will not simply assume so. *See Langston*, 100 F.3d at 1240.

In sum, because Barnes fails to point to evidence that Dr. Obaisi was deliberately indifferent to his medical needs, the district court properly granted summary judgment for Dr. Obaisi.

### 2. Dr. Aguinaldo

Turning now to Dr. Aguinaldo, in Barnes's opening brief to this Court, he failed to provide arguments against the district court's grant of summary judgment to Dr. Aguinaldo. Even though he mentioned Dr. Aguinaldo in the opening brief's headings, his arguments were focused solely on Dr. Obaisi. But in his reply brief, Barnes argues he did not waive his claims against Dr. Aguinaldo because his opening brief mentions that Dr. Aguinaldo replaced Dr. Obaisi after his passing and includes Barnes's testimony that no one did anything for him. In his view, general claims such as those are enough to show he challenged the grant of summary judgment to Dr. Aguinaldo in his opening brief.

In this Circuit, a party may not raise arguments for the first time in their reply brief. *See, e.g.*, *Bradley v. Vill. of Univ. Park*, 59 F.4th 887, 897 (7th Cir. 2023); *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 768 (7th Cir. 2018); *Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009) (issues raised for the first time in a reply brief are ordinarily waived). Because Barnes failed to raise this issue in his opening brief, we find he waived any claims that summary judgment was inappropriately granted to Dr. Aguinaldo.

Even if this argument was not waived, Barnes failed to proffer evidence to create a genuine dispute of material fact as to Dr. Aguinaldo's care to survive summary judgment. In essence, Barnes generally argues that he told several people—

including Dr. Aguinaldo—about his hemorrhoids while he was housed at Stateville, and no one helped him. Barnes contends Dr. Aguinaldo's testimony and Barnes's medical records show that Dr. Aguinaldo ignored Barnes's complaints and discounted the severity of Barnes's condition.

At the same time, Barnes also asserts Dr. Aguinaldo provided "the most minimal treatment even after a specialist had confirmed that Barnes need[ed] surgery and physical therapy to enable him to benefit from such surgery." "[A]n inmate is not entitled to demand specific care, and medical professionals may choose from a range of acceptable courses based on prevailing standards in the field." *Walker*, 940 F.3d at 965 (citation modified). Barnes is not entitled to demand a specific kind of care so long as it is established that he was cared for within the range of acceptable treatment courses, and he concedes that point.

Furthermore, Barnes has failed to put forth evidence showing Dr. Aguinaldo knew of and disregarded an excessive risk to his health. *See Jackson*, 105 F.4th at 961. Barnes saw Dr. Aguinaldo three times: once in July 2016 for bleeding hemorrhoids, once in October 2017 for strep throat, and once in March 2018 for a shower permit renewal. Regarding the July 2016 complaint, Dr. Aguinaldo performed a rectal examination and noted that Barnes was not in distress and found no external hemorrhoids. Dr. Aguinaldo told Barnes to follow up if needed. We see no evidence where Barnes followed up concerning his hemorrhoids and Dr. Aguinaldo took no action toward his treatment.

As for the October 2017 and March 2018 visits with Dr. Aguinaldo, no evidence indicates that Barnes complained of issues with his hemorrhoids during those visits. Out of the

three times Dr. Aguinaldo met with Barnes, then, only once did Barnes complain of hemorrhoids, and after examination, Dr. Aguinaldo found no external hemorrhoids and instructed Barnes to return if he had further issues. Since we defer to a doctor's medical judgment, unless it is so "outside the bounds of medical professionalism," an examination of Barnes's rectum, which revealed no external hemorrhoids, cannot support a showing of deliberate indifference by Dr. Aguinaldo. *See Walker*, 940 F.3d at 965.

All said, even if this issue was not waived, we see no evidence that Dr. Aguinaldo was deliberately indifferent to Barnes's hemorrhoids and that any treatment, or lack thereof, caused Barnes a delay in treatment that aided in his suffering. Thus, summary judgment was properly granted for Dr. Aguinaldo on Barnes's Eighth Amendment deliberate indifference claim.

### B. *Monell* Claim

Finally, Barnes asserts a *Monell* claim against Wexford alleging its collegial review process was the moving force of the delayed treatment he received through the deliberately indifferent actions of Dr. Obaisi and Dr. Aguinaldo.

Section 1983 provides a private right of action for prisoners seeking to enforce their Eighth Amendment rights against corporations like Wexford. 42 U.S.C. § 1983. "*Monell* governs Wexford's liability in [Eighth Amendment deliberate indifference cases] because we, like our sister circuits, treat private corporations acting under color of state law as municipalities." *Clemons*, 106 F.4th at 638 (quoting *Dean*, 18 F.4th at 235). So, for Barnes to prevail on such a claim requires evidence that a Wexford policy, practice, or custom caused a

constitutional violation. *See Walker*, 940 F.3d at 966 (citing *Whiting*, 839 F.3d at 664). Barnes points to Wexford's collegial review policy as the "moving force" behind the delayed care and recommendations of Dr. Obaisi and Dr. Aguinaldo—all of which he claims violated his Eighth Amendment rights. *See Dean*, 18 F.4th at 235 (citation omitted).

But when there is no finding of a constitutional violation, *Monell* liability cannot attach to the private corporation the claim is asserted against. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) (recognizing that there can be no *Monell* liability in the absence of an underlying constitutional violation); *Peoples v. Cook County*, 128 F.4th 901, 905 (7th Cir. 2025) ("Absent a constitutional injury, there is no municipal liability under *Monell*."). That's the case here.

Thus, because we found Barnes failed to support his Eighth Amendment claims against Dr. Obaisi and Dr. Aguinaldo and Barnes's *Monell* claim against Wexford is rooted in those claims, we also find that he has no viable *Monell* claim for liability to attach to Wexford.

### III.   CONCLUSION

Accordingly, we find that both Dr. Obaisi and Dr. Aguinaldo were not deliberately indifferent to Barnes's prolapsed hemorrhoidal condition in violation of the Eighth Amendment. And because there can be no *Monell* liability without a constitutional violation, we AFFIRM.